Williams, J.
The council of the village of Clyde, on the 8th day of March, 1893, adopted a resolution declaring that it was necessary to improve, by sewering, grading, curbing, and paving with brick, a *33 designated portion of Main street in that village, and, that one-third of the cost should be paid by general tax, and the remainder assessed according to the foot frontage against the lots and lands abutting on that part of the street to be so improved. Prior to the adoption of the resolution a majority of the owners of the property which abutted on the proposed improvement signed and presented to the council the following petition:
“To the Village Council:
“The undersigned, a majority of the owners of the property abutting on Main street, between Elm street and the Western Reserve and Maumee turnpike do hereby petition your body for the improvement of said street between said points, and request the passage of the necessary ordinance, assessing the cost thereof as follows: one-third to be assessed upon the general tax list, and two-thirds upon the abutting property in proportion to the feet' front; to which assessment we do hereby agree. The improvement desired, consists of sewering and con-' structing the necessary culverts or drains, grading, paving and setting curb and gutter stones.”
After making due publication of the resolution, the council proceeded to- pass the necessary ordinance, and to let the contract, for the construction of the improvement; and, after its completion, assessed two-thirds of its cost upon the abutting property, according to the foot frontage, and ordered the assessment to be certified to the county auditor for levy. The assessment so made, on each of a number of the abutting lots, exceeds twenty-five per' centum of their valuation on the duplicate for taxation, and, in several instances, is in excess of the entire taxable valuation of the lot. The owners *34 of some of these lots brought the action below to enjoin the excess of the assessment over twenty-five per centum of the taxable valuation of their lots, and obtained a decree in the common pleas court to that effect; but in the circuit court, where the cause was tried on appeal, the judgment was against the plaintiffs who are seeking its reversal here.
Authority for making the assessment in excess of twenty-five per centum of the taxable valuation of the abutting lots is claimed under the act of February 1, 1893 (90 O. L. L., 434), by which any village having at the last federal census a population between 2,320 and 2,350, is authorized to improve its streets and construct sewers. The proceedings here involved were had under that act, which is applicable to the village of Clyde,, and probably to that village only; and the contention is, that as the act makes particular provision for such proceedings by the particular class of corporations to which it applies, its effect is to exclude any limitation imposed by general statute with respect to the amount of the assessment that may be laid on abutting property, and itself attaches no limitation, except that the total assessment shall not exceed two-thirds of the cost of the improvement. Whether such is the operation of the act, which appears to have been the view taken of it by the circuit court, becomes an important inqfiiry in the case. It purports to confer on villages of the designated class, power to borrow money for the purpose of improving and paving their streets, and constructing sewers therein, and provides that, “two-thirds of the cost for improving and paving any street and constructing a sewer under such paved part, for which said street improvement *35 fund shall be used, shall be assessed on the real estate bounding and abutting thereon, and according to the foot frontage of the real estate so bounding and abutting as provided by the laws of the State of Ohio.” It is not doubted that by the last clause above quoted, some of the provisions of the general statutes of the state relating to assessments by villages for local improvements are, by that reference,, incorporated into and become part of the special act,, and were intended to operate upon and govern assessments under the act. It is urged, however, that the reference is only to those provisions which prescribe the manner of making assessments by the front foot. But, there seems to be no particular manner prescribed by the general statutes for making-assessments by that method beyond what the-words “by the foot front” fairly imports, which is that the assessment is to be apportioned according; to the number of the feet front subject to the assessment, and, that manner is as certainly described in. the same language in the special act; so that, any reference to the general statutes for that purpose1 was not only unnecessary, but without any significance. The reference, we think, is rather to those-general provisions of the laws of the state-relating to local assessments in regard to' which the special act is silent, including, no-doubt, those providing for .the adoption of the-necessary resolution, and the improvement and. assessing ordinances, though these steps belong to-the mode of procedure for the accomplishment of the-improvement, and are required to- be taken, whatever method of assessment may be resorted to for the payment of the improvement. But while the-general provisions- alluded to are included in the reference in the special act, it by no means follows *36 that others are not also. The language is broad enough to comprehend all general statutory regulations governing the making of assessments by incorporated villages on abutting property. Among ¡such general regulations in force when the special act was passed, and when the proceedings in question were had under it, is that contained in section 2270, of the Revised Statutes, which forbids the levy ¡by municipal corporations of the class to which the village of Clyde belongs, of any tax or assessment upon any lot or land for any improvement, in excess <of twenty-five per centum of the value of the property as assessed for taxation. From this and other similar statutory provisions, it appears to be a general policy of our legislation to restrain the power .of local assessment, by fixing a limit on the amount. that may be levied, beyond which municipal corporations may not go. The policy is a salutary one, established for the purpose of affording protection against unreasonable public burdens, and it is not to be presumed that, in the enactment of subsequent legislation on the subject of assessments, there was any intention to abandon it; naturally, the presumption would be, that the intention was to adhere to the policy, unless the contrary be clearly shown. In giving construction to- this special act, it should, therefore, if possible, be brought into harmony with section 2270 of the general statutes, and effect be given to the provisions of both. This, we think, may be done. If it had been intended by the former, to authorize assessments to be laid on abutting lots without limit upon the amount, the latter easily could, and no doubt would have been excepted from the provisions of the general laws of the state expressly made applicable to assessments under the special act. This was not done; and there appears to be no *37 controlling necessity requiring the interpolation of the exception, by construction, nor such irreconcilable conflict between the two statutes, that both; may not operate together. While the special act' fixes the proportion of the improvement fund that may be raised by assessment, it is silent as to the amount, that may be laid on the specific lots and lands which, abut on the improvement; and in that respect the assessment is governed by section 2270, and subject to the limitation it imposes. The rules of interpretation in such cases, and some of the reasons therefor, are set forth in the opinion in Cincinnati v. Connor, 55 Ohio St., 82, and need not be repeated here. Much of what is there said is applicable here.
The further claim is made, in support of the judgment below, that the plaintiffs are estopped from contesting the assessments against their property because, with knowledge that the improvement was; under construction, they suffered it to proceed to1 completion without objection; or, if all of the plaintiffs not so estopped, those of them are estopped who-signed the petition that was presented to the council requesting the improvement to be made. The record shows that all of the plaintiffs knew of the progress of the improvement, and made no objection to its construction, or to. any of the proceedings under which it was constructed. This acquiescence on their part would be sufficient to estop them from attacking the validity of those proceedings. But they had! no knowledge of the amount of the assessment charged against their lots, and could have none, until the assessing ordinance was passed; and they promptly interposed with their injunction as soon as; they learned the assessment exceeded twenty-fiveper centum of the taxable valuation of their lots. Silence., or assent to the making of the improvement, could *38 not operate as an estoppel to challenge the correctness of the assessment, for until the plaintiffs had [knowledge of the assessment it was their right to assume that it would be made in conformity with the law, and not in violation of the positive prohibitive provisions of the statute. To hold otherwise, would require them, not only to take notice at their peril of the illegal action of the public authorities, but to anticipate that in their official action they would disregard their legal duties. Their silence or acquiescence bound them no further than to submission to a proper assessment against their property, legally imposed. And, it can hardly be supposed that the plaintiffs who> signed the petition for the improvement intended thereby to donate their entire property to the public, or, what is practically the same thing, consent to an assessment that would amount to its confiscation. They evidently contemplated that some special benefit would accrue to them from the construction of the improvement, which could not possibly be the case if the substantial value of their property were taken to pay the assessment laid upon it. The petition must be construed in the light of this situation, and so as to effectuate the manifest intention of the parties. Some other questions are argued in the case, but they do not seem to be material. We express no opinion upon the constitutionality of the special act, for that is unnecessary to the decision of the case. The plaintiffs consent that the assessments. made .against their respective lots shall stand to an amount equal to one-quarter of their taxable valuation, and they are entitled to an injunction restraining the collection of the excess. Such judgment may be entered here in connection with the reversal of the judgment below.

Judgment accordingly.